Welcome to the Fifth Circuit this morning. We have the opportunity to hear three cases today. We'll probably take a break after the second. If anybody for the third case is here, be aware of that. The microphone is a little bit different now, perhaps from times you've appeared before. For those of you who have, it's the sort of long horizontal object on the top of the podium. Try not to hit it with your papers and otherwise the recordings get quite distorted when you strike the microphone. Also stay behind the microphone. A lot of us like to walk around a bit when talking and advocating. Don't do that here. Stay right behind the microphone. The lighting system is doubtlessly familiar to all of you. Much like on the highways of New Orleans, green, yellow, caution, red. Get a ticket if you run a red light. So stop at the red light. We may give you some more time and certainly if you're answering a question, we'll give you more time to do that. The first case of the day, U.S. versus Salem. Marlo Kadeidu from Missoula. Would you say your last name again? Kadeidu. Right. So in this case, the dispute is pretty narrow. There are quite a few areas where there are no disputes. There's no dispute that Miss Salem's salary is her sole management community property. There's no dispute that Texas law provides that sole management community property is not garnishable. That's fine, Daniel. Well, go ahead. Thank you. Go ahead. Thank you. It's not garnishable under the Texas Family Code and then there's also a Texas constitutional provision that prohibits the garnishment of wages for personal service. There's also no dispute that the Federal Debt Collections Procedures Act provides, has a provision that says that garnishment of co-owned property is permissible only to the extent permitted under state law. So there's a specific state law limitation on that. The question here, and really the only question, is whether the later enactment of the Mandatory Victim Restitution Act implicitly repealed by implication that provision of the FDCPA that contains the state law limitation. So that's really where we are here. We rely on several cases. Well, first of all, there are actually two provisions of the FDCPA that contain that state law limitation and they are 28 U.S.C. 3205A and then 28 U.S.C. 3010A and are basically parallels. This case seems to turn on your statement that the MVRA has no application here. Because if it does, it seems to me you lose. I'm sorry, I didn't understand. The MVRA. Your brief says the MVRA has no application here. If that's correct, you would the government's interpretation of the MVRA that it repeals that state law limitation. Notwithstanding clause. It does. And there are some cases that say that that notwithstanding clause is kind of a broad, you know, can give us an idea that Congress intended a broad repeal. But then there's also case law that says that that notwithstanding language does not occupy the field. And so you really do have to look and see whether Congress. What's your best case that the notwithstanding clause either for special assessments as distinct from restitution fines or for the whole kit and caboodle of federal criminal debts. What's your best case that that clause doesn't sweep away state exemptions? Well, I would say, I mean, of course, we have the Fifth Circuit cases where we use that. What's your best single case? I would say Duran, the 11th Circuit's case. What about the Supreme Court's opinion in Cisneros v. Alpine, 1993, where it talks about the use of such a notwithstanding clause clearly signals the drafter's intention that the provisions of the notwithstanding section override conflicting provisions of any other section? Well, I would say, I would say the problem here is that we have to determine whether that language, there's not an express provision in the MR, Mandatory Victim Restitution Act. I keep saying the letters backwards. The MVRA, there isn't an express provision that repeals that section. It's all by implication. And the notwithstanding clause, there is the Novak case that we cite for a different proposition has a long discussion of when you can say that a notwithstanding any other law clause essentially occupies the field. And in this case, I don't think it does because if you take the government's argument to its logical extent, you essentially, you're reading out, I mean, in terms of statutory construction, you're not supposed to read out an entire provision of a law if there is a way of reading the law so that the provision can be given effect. And that's essentially what's going on here. What about just common sense that here we have a federal law. It's a special assessment imposed in a criminal case. And as a matter of common sense, I don't believe the federal court's going to say, well, we've imposed this special assessment in a criminal case, but if there's a state law that conflicts with it, state law controls for, I'll call it damages for want of a better term, in a federal criminal proceeding. Well, I would say if you're talking about restitution, then certainly that would be the case. Restitution, I think, is a little bit clearer than a special assessment. Restitution is really almost like tort damages. Restitution is to repay the victim for the offense. And so, yes, if we're talking about restitution, if we're talking about a practical effect, then certainly we might want to give effect to that. And I would say that under the Marsden case that we cite, Texas state law, I think, would provide that, because it is akin to a tortious liability. So you could garnish community, sole management community property assets. What we're talking about here is not that. We're not talking about damages. We're talking about, you know, goes to a fund. And that fine is something that, and we're also talking about garnishing the wages of an innocent spouse. So you accept loftus and decay? You're saying? I do not. I think loftus... I thought you just said restitution could, if Texas gives this gentleman half of his, a property interest and half his spouse's salary. I thought you were just saying restitution is different under 3013. No? Restitution is different under Texas state law. Texas state law provides that you can garnish sole management community property for... I thought the Constitution said you can never garnish current wages. You can't garnish current wages. That's correct. But you're saying the federal restitution debt collection would allow you to? No. No. What I'm actually saying is that the Texas Constitution, let me go here to the provision of the Texas Family Code. So the Texas Family Code allows for garnishment of sole management community property for tortious... It's not allowed for non-tortious liabilities. But I would say that the Texas Family Code would allow for garnishment for tortious liabilities. And I think that restitution is more akin to a tortious liability. It's damages. What's a criminal fine? What's a criminal fine? A criminal fine is not... Well, a criminal fine... So in this case, let me kind of take a step back here. We're talking about an innocent spouse whose wages, whose current wages are being garnished to pay her husband's fine, not to pay her husband's restitution. Well, to pay her husband's special assessment, rather. And so when we're talking about a special assessment versus restitution, what we're talking about is something... The special assessment is not something that was imposed because there was some benefit to the defendant. And so in a restitution situation, you could say that the benefit, that the wife basically may have gotten a benefit from her husband's ill-gotten gains that are going to be awarded as restitution because they were married and he was engaging in whatever fraud it was. And so the wife got the benefit of that. And so there's some equitable argument that a wife ought to be liable for her husband's restitution award and that her wages can be garnished for that. I don't see that it's focused on the innocent, whether she was an unindicted co-conspirator or not at all. This is that Texas gives him half a property interest in her salary. It does. So it's focused on him and his criminal conduct. And so extracted special assessment goes into crime victim fund. Right. It does. I guess I'm not understanding the question. Texas does in fact provide that he has an interest in her sole management community property. Sure. But Texas law also provides that has these broad community property protections so that a wife's sole management community property can't be garnished for certain things and it can't be garnished for. So you're looking at the policy and language of Texas statute as Judge Barksdale and probably Judge Higginson too have referenced. We're interpreting a federal statute which on its interpretation that matters. So how do you policy etc. that you want to talk about that justifies the Texas scheme? How is any of that controlling over whether the straightforward language or the MVRA which allows enforcement against all property or rights to property of person find and the only property exempt is property of the United States cannot seize to satisfy federal income taxes? Seems like that's the stat set of statutes and those are the cases that we have to talk about, not Texas case. Well, I mean, certainly we've we've moved away from talking about the federal statutes in the federal cases. And I'll go back to those because I think it makes sense that the Seymour case, there are a number of times when this court has actually looked to the Federal Debt Collection Procedures Act state law limitations and has gone through that entire state law analysis. And if it were true that the MVRA was repealed the state law limitations by implication, then there would be no need to go through that entire analysis. So Seymour was actually garnishment of a joint account to satisfy restitution. So I procedurally I think it was, I'd have to look. Well, the underlying case. Again, here you've got an underlying case criminal special assessment. I understand restitution comes out of criminal proceedings too, but you're making reference to the other matters that seem, you were talking about the civil side as the underlying case. That's all right, go ahead. It was actually, I just took a look at Seymour and it was in fact, it was a bank fraud case. And so the underlying case was a bank fraud case and it was a question of garnishment of a joint account to satisfy restitution. And the court went through the entire state law limitations analysis and said Mississippi law controls what extent Ralph and Judy Seymour's joint account is subject to garnishment. So in Seymour, this court has actually incorporated that state law limitation analysis. And then in Aguirre also. Seymour is non-presidential, unpublished. It is, that's correct. And again, we don't have any cases that deal with the special assessment. Let me ask you also about Seymour. I thought there the court was only trying to determine what property interest the defendant had, which made Mississippi state law relevant, but was not dealing with what property was exempt from garnishment. Is that, do I understand Seymour correctly? Well, Seymour, in Seymour, the court cited to the state law limitation and then held that under, but yes, I mean, ultimately in all these cases, the court has to determine what the property interest is. So that's always an initial part of the analysis. So you look at what the property interest is and you determine that someone has a, that the garnishable, that the property interests exist and can be garnished and then, or exist, and then you look at whether they can be garnished. And the government keeps talking about how in these cases, we just look to state law to look at these cases and what you'd see is, okay, the state law provides that this is sole management community property, period, end of story. There wouldn't be a discussion about whether Mississippi law permits the garnishment. I mean, that second step of the analysis is precisely the state law limitation that comes out of the Federal Debt Collection Procedures Act. So it's just, I think it's disingenuous to say that all it does is look at, all these cases do is determine a property right when you can see that the courts, the court is going through that analysis and that analysis is the same. Can I ask you at the sentencing, did the district court explicitly delegate a payment plan for the special assessment? I'm trying to recall sentencing. I was there. It was a long time ago. Because by statute, it's due immediately. So I know a sentencing judge can say, okay, BOP set up an IFRP, it's going to be over time. But if they don't say that, it's due immediately. Well, and I seem to recall, well, I know that our practice in the Northern District of Texas is to order it paid. But what happens is if the defendant doesn't have the assets, then they'll set up an inmate, they'll set, which is what happened in this case. There was an inmate responsibility assessment out of, out of Mr. Elashi's account. And so it's been being, it's been paid regularly. Do you remember what the JNC said? I, I don't remember. I mean, I don't have it in front of me, but I imagine it said that it was ordered, it was ordered to be paid immediately because they normally are. There's no, you don't see a problem with the government trying to enforce it now in a very belatedly way after, right? BOP could have enlarged the, the payments, advanced the payments. I don't really know what the time, what difference the timing makes. Well, he either did or didn't pay immediately as the statute required, and the government took no action at that point. Well, but, but I'm not arguing that it's the delay in payment that means that. Okay, so you're not, you have no non-delegate, no delegation argument here? No. All right. Thank you. Good morning, Your Honors. Megan Fahey for the United States. May it please the Court. Judge Higginson, to answer your last question, I have a copy of Mr. Elashi's JNC, and the schedule of payments in subsection F required that the special assessment be paid immediately. You, prosecutors and former prosecutors use acronyms. What's JNC? Oh, I'm so sorry. The judgment, his, his criminal judgment. JNC? Judgment and commitment order. Oh, okay. So, and that, that's what I remember usually, and if I remember, there was a significant fine because the man had InfoComm or whatever, or, or, so does that not alter the analysis here? If, if, if a sentencing court says pay the small special assessment immediately, and then they don't, can the government then set up its own schedule of payment in prison, and then much later come after the spouse? Yes? Yes, Your Honor. Once it's doing payable immediately, the government can't enforce the full amount of, uh, of the fine. Even years later? And years later. It expires after five years, special assessments do. Right. And, and that was partly what propelled this? Was it your five years was running? That's exactly what happened. Well, we're nearing the end. This was filed six months before the special assessment expired. But, but it is, it is, obviously, factually, there are concerns here. I'm assuming she was not an unindicted co-conspirator, so there's no suggestion of her involvement, and so when BOP, when, when a defendant's told you got to pay immediately, then they don't, and then they get to BOP, and they get the privileges they get if they sign up in the program. I'm assuming no one told him that, oh, even at the rate we're collecting, your wife in four years is going to suddenly, as a school teacher, have to pay the rest. He got no notice of that, I'm guessing. I'm not sure if it was told to him in those terms, Your Honor. Yeah. But he has given a demand letter and saying that it's due and payable immediately if you fail to do so, the government will take enforcement. But he jointly with BOP agreed to the amounts, so no one, and BOP can enlarge it and advance it. They could have done a lot of things, but all of a sudden, they wait. It seems like. I believe you're talking about the inmate financial responsibility program. Yes. Right. Yes, that's a matter that our office generally leaves to the Bureau of Prisons, between the Bureau of Prisons and the defendant that's incarcerated. But your argument is, I think I'm correct, but you tell me if I'm wrong, your argument is that in spite of a state constitutional decision saying these wages can't be garnished, the government's going to elect to pursue his wife's, the school teacher's money. And my point is, when you get an immediate payment at sentencing, and then you don't pursue nonpayment then, and the government, because inmates get significant advantages if they sign up and they do it jointly and they go through it carefully, and no one again tells him, we'll be going after your wife and her children, even at the schedule that we've set up with you. It just seems like, as the district court expressed, this is heavy-handed. Your Honor, this garnishment was done as a matter of last resort when all other options had failed and the debt was about to expire, and we were left with a sole option when the defendant is not going to cooperate to pursue his property interests under state law, which is what happened here, and we had to get it paid in full before the debt expired. And even after the garnishment was taking place, I told counsel for Ms. Salim I would be willing to enter into conversations to lower the amounts to make sure it gets paid in full in a manner in which it would not affect her family as much, but they didn't want to have those conversations. So this is really the only option we were left with when we could not pick it up in full through the which is typically how special assessments are collected. But this one was different because there were 35 counts of conviction. It was a $3,500 special assessment, and largely those payments from the Bureau of Prisons are coming from their commissary accounts, and typically they come in $15 to $20 every three months. Is there anything in the record to show he wasn't paying every single time according to that account? No, Your Honor, there's nothing in the record about the Inmate Financial Responsibility Program or his compliance with it. After four and a half years, the government had collected approximately $600. Do you know whether your practice in your district is a position the Department of Justice is taking nationwide as to every inmate that doesn't pay off according to those account plans? Does the government go after nationally every single time the spouse with the children's money? Well, Your Honor, many times the government, because state property, state law defines it. Right, it defends. But if the state law allows it the way Texas does, unlike, say, South Dakota, your understanding is that the practice pursued here is the one the government's pursuing everywhere? Yes, Your Honor, as far as I'm aware, that it's our every financial legation unit's obligation to pursue criminal debts that aren't being paid in full. Are you aware of any case law that's raising some significant considerations? Are you aware of any case law that has analyzed the obligations subject to the kind of delayed notification of the defendant or the inmate like this, or otherwise suggested there's a problem in what you did in this case? I'm not sure what delayed notification you're speaking of. Well, Judge Higginson was suggesting that perhaps your ability to pursue assets elsewhere, the wife, for example, would not have been known by the inmate at the time that he was making these periodic payments to the commissary fund or remedies could be taken, he may not have been aware that the property of his family could be seized, or at least some part of it. So I'm just wondering, is there any case law that deals with the kinds of issues we're talking about? Well, Your Honor, he has given initial notice. We typically enforce criminal restitution judgments for 20 years after release from incarceration. That's the problem. I mean, the logic of jumping to 3013 and saying, well, this is just like restitution, this is just like a fine, which is pretty indispensable for your analysis to invoke loftus and decay. Yes, Your Honor. But it's not. I mean, a special assessment, as you said, that's due in five years. The inmate's going to usually have to pay it before he ever gets back out into a working situation. So number one, restitution and fines, you have up to 20 years, right? Correct. Okay. After release from incarceration. Yeah, so it's a lot easier for people to pay those back. It contemplates that usually the defendant, obviously this guy's in for 65 years. Correct. So, and I'm just thinking, I mean, the logic of, oh, this is automatically the same, but again, it's not. As your opposing counsel points out, this goes into a big crime victim fund. This goes for U.S. government programs everywhere. It doesn't go to the victim. So I see it as different that way also. Then let's say you don't pay your restitution or your fine. You can be resentenced, correct? Correct. If you don't pay your special assessment, can the government seek to re-sentence an individual? I don't think so. I don't believe so, Your Honor. So these are very different things. So to just say, well, loft is controls, I see special assessments as extremely different and coming up much quicker. Here you've got a defendant who's told pay immediately. If the government doesn't think he pays immediately, then pursue him for a violation there. But then instead you put him in an account, he thinks he's paying every single one and he always does. And then at the very end, the government looks to the wife. Is that essentially what happens here? I'm not sure, Your Honor, because I didn't go through all the demand letters. Typically in our office, we make repeated demands, requests for financial statements, requests to enter into a payment plan. We review cases every one to two years. Because that wasn't an issue in the lower court, I haven't researched that for the purposes of this appeal. What is the legislative history, if any, of the reasons for assessments in criminal cases? I'm not sure regarding the legislative history, Your Honor, but the statute says that the special assessments under 18 U.S.C. Section 3013B are enforced in the same manner as a fine. Fines are enforced under 3613A. The special assessment is generally $100 per count, just like you said here, 35 counts, $100, $3,500. And what is the rationale for the criminal assessment, whether it's legislative history or just everybody knows it in the federal government or what? I believe it's both punitive and compensatory in nature, Your Honor, not knowing. Because it's no small matter. Quite often, the only way you can have jurisdiction here in our So it's got pretty significant legal weight. Yes, Your Honor. I imagine it's both punitive and compensatory in nature, like most parts of criminal debts that are ordered. It's mandatory. It's in the legal sentence if it's not ordered. Yes. And it's the top of the priority, right? Yes, Your Honor. It comes before fines are restituted. It gets paid before. When a defendant makes a $200 payment, the first $100 goes towards a special assessment, and then the next $100 would start being credited to any kind of fine or restitution. Thank you. And it's the government's position that this United States v. Decay fully disposes of this issue by virtue of the fact that 3013B states that 3613A applies. And in the Decay case, that was another garnishment case under the Federal Debt Collection Procedures Act where the United States was enforcing a criminal debt against two defendants' state pension plans that would have been exempt under other federal and state laws. And the Fifth Circuit in that case found that notwithstanding any other federal law language controlled that in Decay, it said that the anti-alienation provision of the Internal Revenue Code doesn't apply. It also cited the Novak case that says ERISA doesn't prevent the garnishment, and that to the extent any state laws conflicted with the notwithstanding language, they were preempted. The FDCPA itself says under 3001B, to the extent that any other federal law specifies procedures for recovering, those procedures shall apply to the extent that procedure is inconsistent. So the FDCPA itself, you wouldn't even really need. It's not a big jump. Are you familiar with 3001? Vaguely, Your Honor. Okay. So although it does say state law trumps, it's then got this pullback clause. That's correct, Your Honor. And then you say jump to the MVRA, and that's the end of the story. MVRA, which was enacted six years later, pulled the state law exemptions out of applicability for the enforcement of federal criminal debt. And the state law exemptions are typically, I mean, the Federal Debt Collection Procedures Act is the mechanism by which the government primarily enforces all debts, including civil debts. And if we were having a student loan here, Ms. Salim's argument would be completely on point. We couldn't seize it under state law. In addition to that, because the state law exemptions are also found in 28 U.S.C. 3014 of the FDCPA, and that's the statute that's specifically in 3613A that says they don't apply. But that's not a comprehensive list, obviously, because the anti-alienation provision of the IRC, of the Internal Revenue Code and ERISA also don't apply. And Ms. Salim cites primarily three cases to support her position that the co-own language of FDCPA bootstraps state law exemptions back into the analysis. But the Fifth Circuit and the Seymour and the Eleventh Circuit and the Duran case, both were primarily focused on property interest, and that's the huge distinction here, that state law defines the property interest and is always relevant to the discussion from that standpoint. But once the state law property interest is defined, federal law controls the consequences, and that's when state law exemptions don't apply. Do you know offhand how many states would therefore have state laws where you wouldn't be able to pursue the spouse in this context? Well, Your Honor, there's a number of ways to pursue spouses, and frequently in the community property states, because the defendant actually has a defined property interest, we can skip a step, because he actually has a property interest, so we can pursue the spouses directly. But in the common law states, spouses are frequently also pursued, but that would also require filing a fraudulent transfer action, and that happens quite frequently, and a lot of financial litigation units do that. We just procedurally are able to skip that step in community property states. Are you familiar enough with the Seymour case to say why wasn't the possibility of an exemption discussed in Seymour, why was it only an analysis of what interest the spouse had in the property? Your Honor, I believe it's because it's the very first step in the equation is to But there's usually, but there's another step, and so why didn't they have to get to the other step? In the Seymour case, the wife was asserting an equitable interest under Mississippi state law, and the Fifth Circuit found that she did not establish she had a property ownership interest, and that ended the analysis. Okay. And the Aguirre case out of the Fifth Circuit that's also frequently cited by Ms. Salim, that was a forfeiture and foreclosure of a drug house case, and it's basically stating, really has no relevance to this case, but it's citing to the Loftus case stating that the government concedes the joint management community property 100%, including the non-debtor spouse's undivided one-half interest to enforce a restitution order, which is distinct from the ability under the Medaris case, which was a tax case from the Fifth Circuit in 1989, stating that the state law sole management community property distinction doesn't apply to the federal government for enforcing a tax lien, and we can only seize one-half. How much will be garnished if you prevail? Your Honor, I believe that all of it's already been garnished, and the debt's been paid in full for approximately a year now, and it was $2,912.88 that was taken from her wages. And to reinforce the United States point, Section 3003B of the FDCPA states that nothing contained within the FDCPA should be construed to curtail one at the right of the United States under any other federal or state law to collect a fine, penalty, assessment, restitution, or forfeiture in a criminal case. That's what Ms. Salim is asking the Court to do here, but that is clearly contrary to the Decay case and 3613A, the notwithstanding language, and the interpretation the United States is urging the Court to take with this case was actually the one the Fifth Circuit adopted in Note 7 of the Loftus case. When it found that the United States could seize sole management community property of a non-debtor spouse to enforce a criminal debt, the Fifth Circuit actually cited 28 U.S.C. 3003B. And that criminal debt was restitution? That was restitution. Because — Because of the 20-year span to pay off, right? That's correct, Your Honor. Most of the cases are enforcing a restitution because the restitution are usually the large orders, and most special assessments are $100 to $200. They get paid off through the Treasury Offset Program or the Inmate Financial Responsibility Program before they expire, and the United States doesn't have to garnish. So I believe that's probably why we don't see a lot of case law in special assessments, Your Honor. Well, Counselor, I think we probably have heard what we need to hear, unless anybody has some other questions. Thank you, Counselor. Thank you very much. Thank you. I just wanted to address a couple of points that were made during opposing counsel's argument. And, well, actually, before that, before I get to that, you had asked what my best case is, and I think Duran is probably the most explicit case, although I still believe that if the analysis were not necessary, if the government's reading of the confluence of these two statutes were correct, then you wouldn't even need to go through that analysis and determine that the property is garnishable under state law. You start with that state law, and then you say that it's— What about the statute not mentioned that I'm asked about, 28 U.S.C. 3001b, which is the limitation provision in the FDCPA? Yes. Well, the limitation provision, that provision— Just basically, if another federal law specifies procedure for recovering that's inconsistent, the other provision shall apply. So it seemed to contemplate exactly the MVRA fit. Well, I think that means other collection mechanisms. The FDCPA provides certain collection mechanisms, but the government has a whole lot of other collection mechanisms available to it, and so it can go through state law. There are other federal statutes that are available. So I think that that's what that is referencing. I'm not sure that that's—I mean, it seems to me that there's an express state law limitation that's in there, and so I don't think that the FDCPA was saying you can read out, you can ignore provisions of our statute to the extent that there's something later that comes along that implicitly repeals it. I just don't believe that that limitation is—I don't think it's read out by that provision or that rule of construction. Actually, let me—I got a little bit off here. I wanted to ask—I wanted to respond back. You asked about the best case, and I talked about Duran and then also the other Fifth Circuit cases, although they are admittedly unpublished cases. On the question of repeal by implication, the best cases on that are going to be Rodriguez and Ardoin, and those cases I would talk about just for a moment. Rodriguez is a Supreme Court case, and it talks about how important it is that when you're trying to find a reversal or a repeal by a later statute that the implicit partial repeal can only happen if the provisions are completely irreconcilable. So what you're looking at is you've got to have an intent to repeal that is manifest, that is obvious, and it's just not that way here. You can read these statutes—if you read the statutes the way the government wants, you're just ignoring an entire provision of the statute. If you read the statute the way we advocate for Ms. Salem, you can still give effect to all the provisions of those statutes. The mandatory victim, the MVRA, talks about other mechanisms for collecting debt, and there are other mechanisms other than the FDCPA. The FDCPA contains a state law limitation. That state law limitation should apply. Your opposing counsel said that your client's husband, I think he would have met every single month while he's in jail, and he could have increased his own payments through that account. He would have seen what the end amount is. It isn't, perhaps, as I was suggesting, that everyone's blindsided at the end. Well, I mean, it's my understanding that the way that that program works is that the inmate is—that they sit down with the Bureau of Prisons and work out a payment schedule and that that payment schedule is something that is laid out, that every month you're going to have to be paying a certain amount. And he, in fact, paid every single month as scheduled. But he could have enlarged it. I suppose he could have enlarged it. I have not myself seen the schedule, so I don't know if it has an end date or if it simply says every month you need to pay this amount until it's paid. But certainly, he was paying as agreed. It was taken out every month. That was the plan. And, in fact, you know, I think people are blindsided. There's just no—when you set up a schedule and you're doing the right thing and you're paying that amount, you don't anticipate that your wife and your down's child are going to have their monies garnished to pay your special assessment. And also, I— Laura, you have had time to answer a few questions. I'll give you one more minute to wrap up. I apologize. I'm sorry. I can't see the— It just happened. The light under the— It just happened. I was ducking, but I missed it. I did want to make one point about—you had asked about the special assessment law and what the legislative history of that was. When I was reading, that is actually a funding mechanism for that victim fund, and then the excess of that money goes back to the Treasury. So it's really more of a funding mechanism. Thank you.